

Michael I. Verde (MV-6595)
Michael F. Gallagher (MG-7895)
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, New York 10022
(212) 940-8800

Plaintiff *Pro Se*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

KATTEN MUCHIN ROSENMAN LLP,

                        Plaintiff,

         - against -

KAYVAN HAKIM, YASSMINE HAKIM and GREAT
NORTHERN INSURANCE COMPANY,

                      Defendants.

------------------------------------------------------------ x

**COMPLAINT**

        Katten Muchin Rosenman LLP ("Katten"), as and for its interpleader complaint against

Kayvan Hakim, Yassmine Hakim (collectively, the "Hakims") and Great Northern Insurance

Company ("Great Northern") alleges as follows:

### PARTIES

        1.     Plaintiff Katten is an Illinois limited liability partnership, governed by the laws of

the State of Illinois, that maintains an office for the practice of law in the City, County and State

of New York.  Katten was created as the result of a merger between Katten Muchin Zavis and

Rosenman & Colin LLP on March 27, 2002.  The merged law firm of "Katten Muchin Zavis

Rosenman" changed its name to Katten Muchin Rosenman LLP on May 2, 2005.

        2.     Upon information and belief, defendant Kayvan Hakim is an individual residing

at 410 East 57th Street, Apartment 10 A, New York, New York 10022.

3.      Upon information and belief, defendant Yassmine Hakim is an individual residing at 410 East 57th Street, Apartment 10 A, New York, New York 10022.

4.      Upon information and belief, defendant Great Northern is a corporation organized and existing under the laws of the State of Minnesota, which has its principal place of business at 15 Mountain View Road, Warren, New Jersey 07059.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction over this interpleader action pursuant to 28 U.S.C. § 1335, as there is diversity of citizenship between two or more adverse claimants and the amount in controversy exceeds five hundred dollars ($500).

6.      In accordance with 28 U.S.C. § 1335(a)(2), Katten, upon and pursuant to the Court's directions, will pay the disputed funds into the registry of the Court.

7.      Venue in this district is proper under 28 U.S.C. § 1397, since the Hakims maintain their residence within the Southern District of New York.

## FACTS UNDERLYING DISPUTE

A.      **Background**

8.      In or about 1980, the Hakims purchased a house and accompanying property located at 13 Nickelson Road in South Egremont, Massachusetts (the "Premises").

9.      On or about December 12, 1997, Great Northern issued Masterpiece Homeowner's Insurance Policy No. 11331603-1 (the "Policy") to the Hakims to cover physical loss to, among other things, the Premises and its contents.

10.     The Policy afforded insurance coverage to the Hakims for the period from December 12, 1997 to December 12, 1998.

**B.**     <u>The Claim</u>

11.     On September 19, 1998, the Hakims notified Great Northern of their claim for coverage under the Policy for losses that resulted from physical damage to the Premises and the contents therein by fire on that date (the "Claim").

12.     After the Hakims submitted the Claim, the Hakims and Great Northern engaged in negotiations regarding the amount of insurance coverage Great Northern would provide for the losses resulting from the damage to the Premises and its contents.

        **i.**     <u>The Building Settlement</u>

13.     On or about December 15, 2003, the Hakims and Great Northern entered into a Settlement Agreement and Release for that part of the Claim which was for physical damage to the building and certain landscaping on the Premises, with Great Northern agreeing to pay the Hakims a total amount of $788,800 (the "Building Settlement Agreement").

14.     Prior to execution of the Building Settlement Agreement, Great Northern had already made initial payments to the Hakims in the amount $230,224.14 for the physical damage to the building and the landscaping on the Premises, which amount was included in the total amount of $788,800 contemplated by the Building Settlement Agreement.

15.     Under the terms of the Building Settlement Agreement, Great Northern agreed to pay the remaining balance of $558,575.86 only after it received an executed contract between the Hakims and a contractor memorializing an agreement to rebuild the Hakims' residence (the "Rebuild Contract").

16.     Pending receipt of the Rebuild Contract, Great Northern agreed to deposit $100,000 of the remaining balance of $558,575.86 contemplated by the Building Settlement Agreement into an escrow account to be maintained by Katten.

84144273_2

17.    Further to Great Northern's agreement to deposit $100,000 into an escrow account to be maintained by Katten, the Hakims, Great Northern and Katten executed an Escrow Agreement (the "Building Escrow Agreement").

18.    Pursuant to the Building Escrow Agreement, Great Northern deposited $100,000 into Katten's interest-bearing escrow account at Chase Manhattan Bank (the "Escrow Account").

### ii.    The Contents Settlement

19.    On or about December 15, 2003, the Hakims and Great Northern entered into a Settlement Agreement and Release for that part of the Claim which was for the loss of the contents of the building on the Premises, with Great Northern agreeing to pay the Hakims a total amount of $387,500 (the "Contents Settlement Agreement").

20.    Prior to execution of the Contents Settlement Agreement, Great Northern had already made initial payments to the Hakims in the amount $106,098.85 for the loss of the contents of the building on the Premises, which amount was included in the total amount of $387,500 contemplated by the Contents Settlement Agreement.

21.    Under the terms of the Contents Settlement Agreement, Great Northern agreed to pay the remaining balance of $281,401.15 only after it received the Rebuild Contract.

22.    Pending receipt of the Rebuild Contract, Great Northern agreed to deposit $50,000 of the remaining balance of $281,401.15 contemplated by the Contents Settlement Agreement into an escrow account to be maintained by Katten.

23.    Further to Great Northern's agreement to deposit $50,000 into an escrow account to be maintained by Katten, the Hakims, Great Northern and Katten executed an Escrow Agreement (the "Contents Escrow Agreement").

4

24.    Pursuant to the Contents Escrow Agreement, Great Northern deposited $50,000 into Katten's Escrow Account (the escrowed funds of $150,000 are hereinafter collectively referred to as the "Escrow Funds").

25.    Pursuant to the Building Escrow Agreement and the Contents Escrow Agreement (collectively, the "Escrow Agreements"), Katten agreed to act as the Escrow Agent with respect to the Escrow Funds.

26.    Pursuant to Section 3.2 of the respective Escrow Agreements, the Hakims and Great Northern agreed jointly and severally to indemnify Katten and to hold Katten harmless "from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorneys' fees and disbursements, arising out of and in connection with" the respective Escrow Agreements.

27.    Upon information and belief, the Hakims have not delivered a Rebuild Contract to Great Northern.

28.    Great Northern has requested the return of the Escrow Funds, based on the Hakims' failure to furnish Great Northern with a Rebuild Contract.

**C.    Katten's Resignation as Escrow Agent**

29.    By letter dated February 15, 2007, Katten advised the Hakims and Great Northern that, pursuant to Section 3.7 of the respective Escrow Agreements, it was resigning as Escrow Agent.

30.    Katten's resignation as Escrow Agent became effective as of March 26, 2007.

31.    Pursuant to the terms of the Escrow Agreements, upon Katten's resignation as Escrow Agent, the parties were obligated to choose a new Escrow Agent.

84144273_2

32. In the absence of a new Escrow Agent, the terms of the Escrow Agreements provide that Katten shall deliver the entirety of the Escrow Funds to a court of competent jurisdiction.

33. As of April 11, 2007, Katten has not been advised of a new Escrow Agent.

## AS AND FOR A FIRST CAUSE OF ACTION

34. Katten repeats and realleges the allegations in Paragraphs 1 through 33 as if fully set forth herein.

35. Katten cannot determine which of the parties herein has a superior right to the Escrow Funds.

36. Katten therefore requests that the Court determine the rights of the respective parties to the Escrow Funds.

## AS AND FOR A SECOND CAUSE OF ACTION

37. Katten repeats and realleges the allegations in Paragraphs 1 through 36 as if fully set forth herein.

38. There are potentially multiple claims to the Escrow Funds.

39. Pursuant to 28 U.S.C. § 2361, Katten requests that this Court issue an injunction against the commencement of other judicial proceedings in order to reduce the possibility of multiple litigations and inconsistent determinations with respect to the Escrow Funds.

84144273_2

## AS AND FOR A THIRD CAUSE OF ACTION

40.    Katten repeats and realleges the allegations in Paragraphs 1 through 39 as if fully set forth herein.

41.    Katten potentially faces multiple claims to the Escrow Funds.

42.    Pursuant to 28 U.S.C. § 1335(a)(2), Katten shall, upon and pursuant to the Court's directive, deposit the Escrow Funds with the registry of the Court, pending the determination of this action.

43.    Pursuant to 28 U.S.C. § 2361, Katten requests that this Court discharge Katten from any liability related to the Escrow Funds.

## AS AND FOR A FOURTH CAUSE OF ACTION

44.    Katten repeats and realleges the allegations in Paragraphs 1 through 43 as if fully set forth herein.

45.    Katten has performed all of its duties and obligations under the Escrow Agreements.

46.    Katten has incurred expenses, including attorneys' fees and disbursements, arising out of and in connection with the performance of its duties and obligations under the Escrow Agreements.

47.    Pursuant both to common law and to the indemnification and hold harmless provisions set forth at Section 3.2 of the respective Escrow Agreements, Katten is entitled to indemnification from the Hakims and Great Northern of all expenses Katten has incurred, including attorneys' fees and disbursements, arising out of and in connection with the performance of its duties and obligations under the Escrow Agreements.

7

48.     Katten therefore requests that, before any disbursement of the Escrow Funds to the Hakims and/or Great Northern, the Court order that Katten be reimbursed from the Escrow Funds for all expenses Katten has incurred, including attorneys' fees and disbursements, arising out of and in connection with the performance of its duties and obligations under the Escrow Agreements.

**WHEREFORE**, Katten demands judgment:

a)      Determining the rights of the parties, pursuant to the First Cause of Action;

b)      For an injunction against the commencement of other judicial proceedings in order to reduce the possibility of multiple litigations and inconsistent determinations with respect to the Escrow Funds, pursuant to the Second Cause of Action;

c)      Determining whether Katten should deposit the Escrow Funds with the registry of the Court, pursuant to the Third Cause of Action;

d)      Ordering that Katten be reimbursed from the Escrow Funds for all expenses Katten has incurred, including attorneys' fees and disbursements, arising out of and in connection with the performance of its duties and obligations under the Escrow Agreements, pursuant to the Fourth Cause of Action; and

e)      For such other and further relief as this Court deems just and proper, together with the costs, expenses and disbursements of this action, including reasonable attorneys' fees.

84144273_2

Dated: New York, New York
        April 11, 2007

                              KATTEN MUCHIN ROSENMAN LLP

                              By: _____
                                   Michael I. Verde (MV-6959)
                                   Michael F. Gallagher (MG-7895)

                              Plaintiff *Pro Se*
                              575 Madison Avenue
                              New York, New York 10022
                              (212) 940-8800

To:     Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine LLP
        *Attorneys for Defendants Kayvan Hakim and Yassmine Hakim*
        750 Lexington Avenue
        New York, New York 10022-1200
        (212) 888-8200

        Mound Cotton Wollan & Greengrass
        *Attorneys for Defendant Great Northern Insurance Company*
        One Battery Park Plaza
        New York, New York 10004
        (212) 804-4282

84144273_2