UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KATTEN MUCHIN ROSENMAN LLP,                    Index No. 07-CV-2921

              Plaintiff

   -against-                                                    **ANSWER**

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

             Defendants.
------------------------------------------------------------------X

      Defendant, Great Northern Insurance Company ("GNIC"), by and through its attorneys, Mound Cotton Wollan & Greengrass, hereby answers the complaint of Plaintiff Katten Muchin Rosenman LLP ("KMR") as follows:

### As To The Parties

      1.    GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph, except admits upon information and belief that KMR maintains an office for the practice of law in the City, County and State of New York.

      2.    GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

      3.    GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

      4.    Admitted, except as to state that the correct zip code for GNIC's primary place of business is 07061.

## As To Jurisdiction And Venue

5. The allegations set forth in this paragraph are a legal conclusion to which no responsive pleading is required. To the extent that an answer is required, GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

6. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

7. The allegations set forth in this paragraph are a legal conclusion to which no responsive pleading is required. To the extent that an answer is required, GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

## As To The Facts Underlying Dispute

8. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

9. Denied as alleged, except admits that GNIC issued Policy No. 11331603-01 (the "Policy") to Kayvan and Yassmine Hakim (the "Hakims"), and refers to the Policy for its terms and conditions.

10. Denied as alleged, except refers to the Policy for the applicable terms and conditions.

## As To The Claim

11.     Denied as alleged, except admits that on September 19, 1998 the Hakims notified GNIC that a fire occurred at the premises located at 13 Nickelson Road in South Egremont, Massachusetts (the "Premises") and made a claim for coverage under the Policy.

12.     Denied as alleged, except admits that GNIC and the Hakims negotiated and entered into various settlement agreements related to the Policy (collectively, the "Settlement Agreements") and refers to those contracts for their terms and conditions.

## As To The Building Settlement

13.     Denied as alleged, except admits that GNIC and the Hakims entered into a Settlement Agreement and Release, dated December 15, 2003, in connection with the "Deluxe House Coverage" afforded by the Policy (the "Building Settlement Agreement"), and refers to the Building Settlement Agreement for its terms and conditions.

14.     Denied as alleged, except admits that GNIC paid the Hakims $230,224.14 and refers to the Building Settlement Agreement for its terms and conditions.

15.     Denied as alleged, except refers to the Building Settlement Agreement for its terms and conditions.

16.     Denied as alleged, except refers to the Settlement Agreements for their terms and conditions.

17.     Admitted.

18. Denied as alleged, except admits that GNIC deposited $100,000 into an escrow account maintained by KMR in connection with the "Deluxe House Coverage" afforded by the Policy.

### As To The Contents Settlement

19. Denied as alleged, except admits that GNIC and the Hakims entered into a Settlement Agreement and Release, dated December 15, 2003, in connection with the "Deluxe Contents Coverage" afforded by the Policy (the "Contents Settlement Agreement"), and refers to the Contents Settlement Agreement for its terms and conditions.

20. Denied as alleged, except admits that GNIC paid the Hakims $106,098.85 and refers to the Contents Settlement Agreement for its terms and conditions.

21. Denied as alleged, except refers to the Contents Settlement Agreement for its terms and conditions.

22. Denied as alleged, except refers to the Settlement Agreements for their terms and conditions.

23. Admitted.

24. Denied as alleged, except admits that GNIC deposited $50,000 into an escrow account maintained by KMR in connection with the "Deluxe Contents Coverage" afforded by the Policy.

25. Denied as alleged, except refers to the two escrow agreements, dated December 15, 2003, entered into between and among GNIC, KMR and the Hakims (collectively, the "Escrow Agreements") for their terms and conditions.

26. Denied as alleged, except refers to the Escrow Agreements for their terms and conditions.

27. Admitted.

28. Admitted.

### As To KMR's Resignation As Escrow Agent

29. Admitted.

30. Denied.

31. Denied as alleged, except refers to the Escrow Agreements for their terms and conditions.

32. Denied as alleged, except refers to the Escrow Agreements for their terms and conditions.

33. Admitted.

### As To KMR's First Cause Of Action

34. GNIC repeats and realleges the answers to paragraphs 1 through 33 as if fully set forth herein.

35. Denied.

36. The allegations contained in this paragraph are a request for relief to which no responsive pleading is required.

### As To KMR's Second Cause Of Action

37. GNIC repeats and realleges the answers to paragraphs 1 through 36 as if fully set forth herein.

38. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

39. The allegations contained in this paragraph are a request for relief to which no responsive pleading is required.

### As To KMR's Third Cause Of Action

40. GNIC repeats and realleges the answers to paragraphs 1 through 39 as if fully set forth herein.

41. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

42. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

43. The allegations contained in this paragraph are a request for relief to which no responsive pleading is required.

### As To KMR's Fourth Cause Of Action

44. GNIC repeats and realleges the answers to paragraphs 1 through 43 as if fully set forth herein.

45. Denied.

46. GNIC denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in this paragraph.

47. Denied.

48. The allegations contained in this paragraph are a request for relief to which no responsive pleading is required.

### GNIC's First Defense

49. Some or all of the causes of action against GNIC may not be ripe for adjudication.

### GNIC's Second Defense

50. Plaintiff's claims are barred or otherwise limited to the extent that Plaintiff has failed to mitigate its alleged damages.

### GNIC's Third Defense

51. Plaintiffs' claims are barred or otherwise limited by the equitable doctrines of laches, waiver and estoppel.

### GNIC's Fourth Defense

52. GNIC repeats and realleges the allegations set forth in Paragraphs 1 through 51 as if fully set forth herein.

53. Under the Escrow Agreements, KMR agreed to retain the Escrow Funds:

> in the Escrow Account in accordance with this Agreement and shall disburse the Escrowed Funds to the Hakims at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract, as that term is defined in ¶ 10 of the Settlement Agreement. <u>In the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC], unless any adverse claim to the Escrowed Funds has been asserted. In such event, the Escrow Agent shall deposit</u>

>   the Escrowed Funds in a court of competent jurisdiction with respect to such adverse claim(s).

Escrow Agreements, ¶ 2 (emphasis added).

54. By May 2006 -- over two years after the Escrow Agreements were executed -- the Hakims had failed to provide GNIC with the Rebuild Contract and had failed to rebuild the Premises. Thus, by letter dated May 8, 2006, GNIC demanded that KMR return the Escrow Funds to GNIC.

55. By letter dated May 12, 2006, the Hakims stated that they intended to rebuild the Premises and that "GNIC's demand for the return of the escrowed funds [was] premature."

56. The Hakims have not provided or claim to have provided GNIC with the Rebuild Contract.

57. From May 2006 through February 2007, KMR asserted that they would commence an interpleader action to determine the rightful owner of the Escrow Funds. Yet, despite multiple phone calls and written communications by GNIC to KMR requesting that KMR commence the promised interpleader action, KMR willfully, intentionally or as a result of its gross negligence did not do so. GNIC, therefore, informed KMR that it would commence suit against KMR for the Escrow Funds.

58. By letter dated February 15, 2007, KMR resigned as Escrow Agent under the Escrow Agreements "as of February 23, 2007", and requested that GNIC and the Hakims name a new Escrow Agent.

59. By letter dated February 20, 2007, GNIC informed KMR that it was obligated to either return the Escrow Funds to GNIC or place such funds in a court of competent jurisdiction. GNIC also refused to name a new Escrow Agent because the Hakims are not entitled to the Escrow Funds based on their failure to provide the Rebuild Contract to GNIC.

60. By letter dated February 21, 2007, KMR stated that if they did not "receive notice of a new escrow agent within thirty (30) days of February 23, we will take steps to deliver the entirety of the escrowed funds to a court of competent jurisdiction."

61. To date, the Hakims have failed to provide GNIC with the Rebuild Contract and have failed to rebuild the Premises.

62. In violation of the terms and conditions of the Escrow Agreements, KMR, since May 2006, has improperly withheld the Escrow Funds from GNIC and has not "deposited the Escrow Funds in a court of competent jurisdiction."

63. KMR has therefore willfully, intentionally or as a result of its gross negligence breached the Escrow Agreements.

### GNIC's Fifth Defense

64. GNIC repeats and realleges the allegations set forth in Paragraphs 1 through 63 as if fully set forth herein.

65. KMR is no longer the Escrow Agent, and has no right to keep possession of the Escrow Funds.

66. The Hakims have no right to the Escrow Funds as approximately eight and a half years after the Premises was destroyed by fire the Hakims have still not delivered the Rebuild Contract to GNIC or rebuilt the Premises.

67. The Court should therefore order that the Escrow Funds be retuned to GNIC plus all interest, costs and fees as set forth in the relevant contracts.

### GNIC's Sixth Defense

68. GNIC repeats and realleges the allegations set forth in Paragraphs 1 through 67 as if fully set forth herein.

69. The Escrow Agreements provide that KMR:

> <u>shall</u> not be liable for actions or omissions hereunder, <u>expect for its own gross negligence or willful misconduct and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against [KMR]</u>, the Hakims and [GNIC] shall jointly and severally indemnify and hold harmless [KMR] from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorney' fees and disbursements, arising out of and in connection with this Agreement.

Escrow Agreements, ¶ 3.2 (emphasis added).

70. As a result of KMR's gross negligence or willful misconduct, KMR has failed to return the Escrow Funds to GNIC.

71. As a result of KMR's gross negligence or willful misconduct, KMR has not timely deposited the Escrow Funds into a court of competent jurisdiction as required under the Escrow Agreements.

72. As a result of KMR's gross negligence or willful misconduct, KMR is still wrongfully in possession of the Escrow Funds.

73. KMR's gross negligence or willful misconduct precludes it from seeking to have GNIC indemnify or hold harmless KMR.

**WHEREFORE**, Defendant Great Northern Insurance Company respectfully requests that the Court issue a judgment:

(1) requiring KMR (or the registry of the Court) to pay GNIC the Escrow Funds ($150,000) plus all interest, costs and fees;

(2) dismissing KMR's claims that GNIC is obligated to indemnify or hold harmless KMR; and

(3) such other and further relief as deemed just.

Dated: New York, New York
May 2, 2007

                              MOUND COTTON WOLLAN & GREENGRASS

By: _____
Lloyd A. Gura (LG-0500)
Matthew J. Lasky (ML-6666)
One Battery Park Plaza
New York, NY 10004-1486
212-804-4200
*Attorneys for Defendant Great Northern Insurance Company*

TO: Michael J. Verde, Esq.
Katten Muchin Rosenman, LLP
575 Madison Avenue
New York, NY 10022-2585
*Attorneys for Plaintiff*

David J. Mark, Esq.
Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine LLP
International Plaza
750 Lexington Avenue
New York, NY 10022-1200
*Attorneys for Defendants Kayvan Hakim and Yassmine Hakim*

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

Kathryn Alba, being duly sworn, deposes and says:

Deponent is not a party to this action, is over the age of 18 years, and resides in Staten Island, New York 10308. That on the 2nd day of May, 2007 deponent served the annexed Answer upon Michael J. Verde, Esq., Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585, attorneys for plaintiff and David J. Mark, Esq., Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP, International Plaza, 750 Lexington Avenue, New York, NY 10022-1200, attorneys for defendants Kayvan Hakim and Yasmine Hakimat the address designated by said attorneys by depositing the same enclosed in a postpaid properly addressed wrapper directed to each of said attorneys at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
KATHRYN ALBA

Sworn to before me this
2nd day of May, 2007

_____
Notary Public

ANTOINETTE SPIRITO
Notary Public, State of New York
No. 43-9131000
Qualified in Richmond County
Commission Expires March 30, 2010