UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
KATTEN MUCHIN ROSENMAN LLP,              Index No. 07-CV-2921-BSJ

                    Plaintiff

  -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                  Defendants.
------------------------------------------------------------------ X

---

**DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION**

---

                          MOUND COTTON WOLLAN & GREENGRASS
                          Attorneys for Defendant
                          Great Northern Insurance Company
                          One Battery Park Plaza
                          New York, NY 10004
                          (212) 804-4200

On the brief:

Lloyd A. Gura
Matthew J. Lasky

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ..........................................................................................................3

       A.       The Underlying Claim ...........................................................................................3

       B.       The Policy ...............................................................................................................3

       C.       The Settlement and Escrow Agreements ...............................................................4

       D.       KMR's Willful (Or Grossly Negligent) Failure to Return The Escrow Funds to GNIC .......................................................................................................5

ARGUMENT ...............................................................................................................................7

       A.       Summary Judgment Standard .................................................................................7

       B.       GNIC Is Entitled To The Escrow Funds As A Matter of Law ..........................8

       C.       KMR's Claims For Indemnity Against GNIC Should Be Dismissed As A Matter of Law......................................................10

CONCLUSION...........................................................................................................................12

# TABLE OF AUTHORITIES

150 Broadway N.Y. Assoc., L.P. v. Bonder, 14 A.D.3d 1,
784 N.Y.S.2d 63 (1st Dep't 2004) ......................................................................................9

Boone Assocs, L.P. v. Leibovitz, 13 A.D.3d 267, 786 N.Y.S.2d 518 (1st Dep't 2004)............8

Hartzell v. Burdick, 91 Misc.2d 758, 398 N.Y.S.2d 649 (N.Y. City Ct. 1977)......................11

John Hancock Prop. & Cas. Ins. Co. v. Universale
Reins. Co., 147 F.R.D. 40 (S.D.N.Y. 1993) ...........................................................................7

K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632 (2d Cir. 1996) ..................................7

Melodies, Inc. v. Mirabile, 7 A.D.2d 783, 179 N.Y.S.2d 991 (3d Dep't 1958).......................11

Morgan v. McCaffrey, 14 A.D.3d 670, 789 N.Y.S.2d 274 (2d Dep't 2005) ...........................11

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Travelers
Indem. Co., 210 F. Supp. 2d 479 (S.D.N.Y. 2002)..................................................................7

Two Guys From Harrison-N.Y., Inc. v. S.F.R. Realty
Assocs., 63 N.Y.2d 396, 472 N.E.2d 315, 482 N.Y.S.2d 465 (1984) ......................................9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KATTEN MUCHIN ROSENMAN LLP,   Index No. 07-CV-2921-BSJ

                Plaintiff

                **ORAL ARGUMENT REQUESTED**

-against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------X

## DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

Defendant Great Northern Insurance Company ("GNIC") submits this memorandum of law in support of its motion for summary judgment against Plaintiff Katten Muchin Rosenman LLP ("KMR").

## PRELIMINARY STATEMENT

This interpleader action was commenced on April 11, 2007 to determine the rightful owner of $150,000 in escrow funds (the "Escrow Funds") currently (and wrongfully) in the possession of KMR. GNIC provided Defendants Kayvan and Yassmine Hakim (the "Hakims") with home owner's insurance under Policy No. 11331603-01 (12/12/97-12/12/98) (the "Policy", Exhibit "3").[1] On September 19, 1998, a fire occurred at the Hakims' secondary residence located at 13 Nickelson Road, South Egremont, Massachusetts (the "Residence"). The Policy, by its terms and conditions, provides an increased amount of coverage if the Residence is rebuilt

---

[1] "Exhibit" as used herein shall refer to those exhibits annexed to the Affidavit of Robert Link, dated May 17, 2007 ("Link Aff.").

within two years from the date of the fire.[2] The Escrow Funds represent amounts that fall under this conditional coverage.

In connection with the fire, the Hakims settled their claims with GNIC under the Policy pursuant to various agreements, including two escrow agreements, dated December 15, 2003, by and between GNIC, the Hakims and KMR (the "Escrow Agreements", Exhibits "6" and "7"). Pursuant to the Escrow Agreements, the parties agreed that the Escrow Funds would be kept by KMR (as Escrow Agent) until "the Hakims have delivered to and Great Northern has received the Rebuild Contract ... [but] in the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to Great Northern [or, where an adverse claim to such funds has been asserted,] deposit the Escrowed Funds in a court of competent jurisdiction[.]" (Escrow Agreements, Exhibits "6" and "7", ¶ 2.)

On May 8, 2006, more than seven years after the fire destroyed the Residence and two and a half years after the various settlements were executed, GNIC demanded that KMR return the Escrow Funds to GNIC because the Hakims had failed to deliver the Rebuild Contract to GNIC. Despite the fact that the Hakims have still not provided the Rebuild Contract to GNIC -- and in violation of the express terms of the Escrow Agreements -- KMR has neither returned the Escrow Funds to GNIC nor deposited such funds in "a court of competent jurisdiction." Accordingly, as a matter of law, this Court should order KMR to return the Escrow Funds to GNIC as the rightful owner of such funds based upon the Hakims' failure to deliver the Rebuild Contract.

---

[2] The Policy's two year rebuilding requirement for higher coverage had been tolled up until the parties settled the Hakims' claims in 2003.

Moreover, this Court should dismiss KMR's claims for indemnity against GNIC as the Escrow Agreements are clear that KMR should not be indemnified for "its own gross negligence or willful misconduct." (Escrow Agreements, Exhibits "6" and "7", ¶ 3.2.) For more than a year, KMR has been aware that the Hakims have failed to provide the Rebuild Contract to GNIC and that GNIC wanted the Escrow Funds returned to it. Yet, KMR willfully (or, at the very least, as a result of its gross negligence) has failed to return the Escrow Funds to GNIC or deposit such funds with the Court in breach of the Escrow Agreements. KMR's claims for indemnity against GNIC should therefore be dismissed as a matter of law.

## STATEMENT OF FACTS

A.  The Underlying Claim

On September 19, 1998, the Residence and its contents were destroyed by fire. The Policy provided the Hakims certain coverage in connection therewith. On December 15, 2003, GNIC and the Hakims entered into various agreements settling the Hakims' claims for coverage under the Policy in connection with the fire.

B.  The Policy

The Policy provided the Hakims with two relevant coverages, the "Deluxe House Coverage" and "Deluxe Contents Coverage." The Policy's stated limits under the "Deluxe House Coverage" is $209,000 with an "Extended Replacement Cost" basis. (See Policy, Exhibit "3", "Coverage Summary Renewal".) Pursuant to this "Extended Replacement Cost" coverage, GNIC agreed to pay "reconstruction costs" above the Policy's stated limits if the Hakims were to

3

rebuild the residence "<u>within two years</u> from the date of loss."[3] (See id., pp. B-1-B-2 (emphasis added).) Failure to meet this condition means that the Hakims would only be provided the "Verified replacement cost," i.e., up to the stated Policy limits ($209,000). (See id.)

The Policy's stated limits for the Residence under the "Deluxe Contents Coverage" is $104,500 with a "Replacement Cost" basis. (See id., "Coverage Summary Renewal".) Under the "Replacement Cost" coverage, GNIC likewise agreed to pay the Hakims above the Policy's stated limits only if the Residence was rebuilt within two years from the date of loss.[4] (See id., pp. C-1-C-2.)

C.  The Settlement And Escrow Agreements

On December 15, 2003, the Hakims and GNIC executed one settlement agreement in connection with the Policy's "Deluxe House Coverage" for a total of $788,800 (the "House Settlement", Exhibit "4") and a second settlement agreement in connection the Policy's "Deluxe Contents Coverage" for a total of $387,500 (the "Contents Settlement", Exhibit "5"). Under the House and Contents Settlements respectively, GNIC provided the Hakims partial up-front payments of $230,224.14 and $106,098.85. (See House and Contents Settlements, Exhibits "4" and "5", ¶ 9.)

---

[3] The Policy's "Extended replacement cost" provision provides that: "[i]f the payment basis is extended replacement cost, we will pay the reconstruction cost even if this amount is greater than the amount of coverage shown in your policy." (Policy, Exhibit "3", p. B-1.) The Policy thereafter provides that "[i]f you do not repair, replace or rebuild your house or other permanent structure at the same location or some other location within the Commonwealth of Massachusetts within two years from the date of loss, the payment basis will be verified replacement cost." (Id., p. B-2.) Further, the Policy states that: "[i]f the payment basis is verified replacement cost, we will pay the reconstruction cost of your house up to the amount of coverage shown in the Coverage Summary[.]" (Id., p. B-2.)

[4] Under the "Deluxe Contents Coverage", "[i]f the payment basis is replacement cost, we will pay the full cost to replace the contents ... up to the amount of coverage". (Policy, Exhibit "3", p. C-2.) However, the Policy further provides that if "after a covered loss to both house and contents, we pay more than the amount of house coverage because of extended replacement cost, we will automatically increase the amount of contents coverage for that loss by the same percentage that we increased the amount of the house coverage." (Id., p. C-1.)

The House and Contents Settlements also required that $150,000 be deposited into escrow, which was to be paid to the Hakims "upon [GNIC's] receipt of an executed contract between the Hakims and a contractor memorializing an agreement to rebuild the Hakims' residence which is the subject of this loss (the "Rebuild Contract")." (Id., ¶¶ 10-11.) The Escrow Funds were further controlled by the Escrow Agreements, which were expressly incorporated into the House and Contents Settlements. (See id., ¶ 12.)

> Under the Escrow Agreements, KMR agreed to retain the Escrow Funds:
>
> in the Escrow Account in accordance with this Agreement and shall disburse the Escrowed Funds to the Hakims at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract, as that term is defined in ¶10 of the Settlement Agreement. <u>In the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC], unless any adverse claim to the Escrowed Funds has been asserted. In such event, the Escrow Agent shall deposit the Escrowed Funds in a court of competent jurisdiction with respect to such adverse claim(s)</u>.

(Escrow Agreements, Exhibits "6" and "7", ¶ 2 (emphasis added).)

D.   KMR's Willful (Or Grossly Negligent)
     <u>Failure To Return The Escrow Funds To GNIC</u>

A year after the various settlement agreements were executed, GNIC contacted KMR (as former counsel to the Hakims) to ask when GNIC could expect to receive the Rebuild Contract. (See Exhibit "8".) In response, by letter dated December 13, 2004, KMR stated that Mr. Hakim expected to retain a contractor to rebuild the Residence by "mid-February 2005". (See id.) KMR further stated that "[w]e understand that Chubb[5] will keep its file on this matter open until at least mid-February 2005 and will take no action on the escrowed funds held by KMZ Rosenman pursuant to the Settlement Agreements executed by the parties before that time." (Id.)

---

[5]   The Chubb Group of Insurance Companies is an umbrella group of companies to which GNIC is a member. (Link Aff. ¶ 1.)

5

Over a year later, the Hakims had still not provided the Rebuild Contract to GNIC. Thus, on May 8, 2006, GNIC sent a letter to KMR demanding that it return the Escrow Funds to GNIC. (See Exhibit "9".) On May 12, 2006, the Hakims' new counsel (David Mark, Esq.) sent a letter to GNIC wrongly stating that "GNIC's demand for return of the escrow funds is premature." (See Exhibit "10".)

Counsel for GNIC then contacted KMR by phone, and KMR asserted that they would not voluntarily provide the Escrow Funds to GNIC but would commence an interpleader action to determine the rightful owner of such proceeds. (See Exhibit "11".) Despite multiple assurances by KMR that this action would be commenced in a timely fashion, months passed and no interpleader action was filed and the Escrow Funds continued to be wrongfully maintained by KMR. Thus, by letter dated August 24, 2006, GNIC again demanded that KMR return the Escrow Funds to GNIC or commence the promised interpleader action. (See id.) Still more months passed, and KMR wrongfully continued to hold onto the Escrow Funds despite multiple assurances that it would commence an interpleader action and deposit the funds into court.

Given KMR's refusal to abide by the terms and conditions of the Escrow Agreements, in February 2007, GNIC's counsel called KMR and informed it that GNIC intended to file a breach of contract and conversion action against KMR. (See Exhibit "12".) As a result, by letter dated February 15, 2007, KMR resigned as escrow agent "as of February 23, 2007" and requested that the Hakims and GNIC name a new escrow agent. (See id.) By letter dated February 20, 2007, GNIC informed KMR that it would not name a new escrow agent because the Hakims were not entitled to the Escrow Funds based on their failure to provide the Rebuild Contract to GNIC. (See Exhibit "13"). GNIC further demanded that KMR return the Escrow Funds or deposit such proceeds with a court of competent jurisdiction pursuant to KMR's contractual duties. (See id.)

6

By letter dated February 21, 2007, KMR responded that it would "take steps to deliver the entirety of the escrowed funds to a court of competent jurisdiction." (See Exhibit "14"). Further communications between the parties ensued, and finally on April 11, 2007 (almost a year after GNIC demanded return of the Escrow Funds) KMR commenced the instant interpleader action but did not deposit the Escrow Funds with the court in violation of KMR's contractual duties. Indeed, KMR is no longer the Escrow Agent yet refuses to relinquish control of the Escrow Funds.

## ARGUMENT

A.  Summary Judgment Standard

On a motion for summary judgment (under Fed. R. Civ. Proc. 56), the moving party has the burden of establishing that it has a *prima facie* entitlement to judgment as a matter of law. A motion will be granted where there is no genuine issue of material fact that might affect the outcome of the suit. See John Hancock Prop. & Cas. Ins. Co. v. Universale Reins. Co., 147 F.R.D. 40, 45 (S.D.N.Y. 1993). In order to defeat the motion, a nonmoving party must come forward with evidence such that a reasonable jury could return a verdict for the nonmoving party. See John Hancock, 147 F.R.D. at 45. Mere conclusory allegations are not sufficient to defeat a summary judgment motion. See id. at 46. In contract actions, the interpretation of clear and unambiguous language is an issue of law for the court, and is properly resolved on a motion for summary judgment. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Travelers Indem. Co., 210 F. Supp. 2d 479, 485 (S.D.N.Y. 2002), citing K. Bell & Assocs. v. Lloyd's Underwriters, 97 F.3d 632, 637 (2d Cir. 1996).

B.     GNIC Is Entitled To The Escrow Funds As A Matter Of Law

There is no question of fact that GNIC is the rightful owner of the Escrow Funds. The Escrow Agreements are clear and unambiguous that "[i]n the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC.]" (Escrow Agreements, Exhibits "6" and "7", ¶ 2.)  Moreover, the House and Contents Settlements are clear and unambiguous that the Hakims' right to the Escrow Funds are expressly conditioned "upon [GNIC's] receipt of an executed contract between the Hakims and a contractor memorializing an agreement to rebuild the Hakims' residence which is the subject of this loss (the "Rebuild Contract")." (See House and Contents Settlements, Exhibits "4" and "5", ¶¶ 10-11.)  The Hakims have not provided the Rebuild Contract to GNIC. (See Link Aff., ¶ 16.)  Accordingly, GNIC is the rightful owner of the Escrow Funds and such proceeds must be returned to GNIC.

GNIC anticipates that KMR will argue -- as it has done in the past -- that there is no express deadline in the Escrow Agreements for the Hakims to provide the Rebuild Contract. However, when a contract is silent as to the time for performance, New York law implies that "performance is due within a 'reasonable time' under the particular circumstances." Boone Assocs., L.P. v. Leibovitz, 13 A.D.3d 267, 786 N.Y.S.2d 518, 519 (1st Dep't 2004).[6]

Here, the circumstances are that the Policy's stated limits under the "Deluxe House Coverage" is $209,000 and under the "Deluxe Contents Coverage" is $104,500. (See Policy, Exhibit "3", "Coverage Summary Renewal".)  Under the House and Contents Settlements respectively, GNIC provided the Hakims partial up-front payments of $230,224.14 and

---

[6] The Escrow Agreements provide that they "shall be governed under the laws of the State of New York." (Escrow Agreements, Exhibits "6" and "7", ¶ 5.10.)

8

$106,098.85, i.e., in full satisfaction of the Policy's stated limits (See House and Contents Settlements, Exhibits "4" and "5", ¶ 9.)

In order to be entitled to the Escrow Funds under the Policy, therefore, the Hakims were obligated to rebuild the Residence within two years from the date of the fire, plus applicable tolling. (See Policy, Exhibit "3", pp. B-1-B-2, C-1-C-2.) Accordingly, it would be entirely unreasonable to interpret the Escrow Agreements as providing the Hakims with a perpetual right to produce the Rebuild Contract (and gain ownership of the Escrow Funds) when the Hakims' entitlement to such amounts were expressly conditioned upon rebuilding the Residence within two years from the fire. Given that the fire occurred over eight years ago and the Escrow Agreements were executed over three years ago, the Hakims time to provide the Rebuild Contract has come and gone and the Escrow Funds indisputably belong to GNIC.

Moreover, if the Hakims' ability to present the Rebuild Contract lasted in perpetuity, KMR's contractual obligation to "disburse the Escrowed Funds to [GNIC]" "[i]n the event that the Hakims do not deliver the Rebuild Contract" would have no meaning or effect. Indeed, there would never be an appropriate time for the proceeds to be returned to GNIC because the Hakims could present the Rebuild Contract at any time. Such an interpretation of the Escrow Agreements is not permitted under New York law. See Two Guys From Harrison-N.Y., Inc. v. S.F.R. Realty Assocs., 63 N.Y.2d 396, 403, 472 N.E.2d 315, 318, 482 N.Y.S.2d 465, 468 (1984) ("In construing a contract, one of the court's goals is to avoid an interpretation that would leave contractual clauses meaningless.") (citations omitted); 150 Broadway N.Y. Assoc., L.P. v. Bonder, 14 A.D.3d 1, 4, 784 N.Y.S.2d 63, 66 (1st Dep't 2004) ("courts 'are obliged to interpret a contract so as to give meaning to all its terms.'") (citations omitted).

C.  KMR's Claims For Indemnity Against
    GNIC Should Be Dismissed As A Matter Of Law

In its complaint, KMR seeks indemnity relating to these proceedings from GNIC. (See Complaint, Exhibit "1", ¶¶ 44-48.) The Escrow Agreements are clear, however, that KMR:

> shall not be liable for actions or omissions hereunder, <u>expect for its own gross negligence or willful misconduct and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against</u> [KMR], the Hakims and [GNIC] shall jointly and severally indemnify and hold harmless [KMR] from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorney' fees and disbursements, arising out of and in connection with this Agreement.

(Escrow Agreements, Exhibits "6" and "7", ¶ 3.2 (emphasis added).)

To that end, the following facts cannot be disputed by KMR:

- The Hakims have not provided GNIC with a Rebuild Contract (see Link Aff., ¶ 16);

- On May 8, 2006, GNIC demanded that KMR return the Escrow Funds to GNIC (see Exhibit "9");

- Soon thereafter, KMR asserted that they would not voluntarily provide the Escrow Funds to GNIC but would commence an interpleader action to determine the rightful owner of such proceeds (see Exhibit "11");

- No interpleader action was filed in the summer of 2006, so by letter dated August 24, 2006, GNIC again demanded that KMR return the Escrow Funds to GNIC or commence the promised interpleader action (see id.);

- In February 2007, GNIC's counsel called KMR and informed it that GNIC intended to file a breach of contract and conversion action against KMR as KMR was still wrongfully in possession of the Escrow Funds (see Exhibit "12");

- As a result, by letter dated February 15, 2007, KMR resigned as escrow agent "as of February 23, 2007" (see id.); and

- KMR has neither returned the Escrow Funds to GNIC nor has it deposited such funds in "a court of competent jurisdiction" (see Link Aff. at ¶ 18).

There can be no doubt that KMR's failure to either returned the Escrow Funds to GNIC or deposit such funds in "a court of competent jurisdiction" is a "willful" (or at the very least a

"grossly negligent") breach of the Escrow Agreements. This willful or grossly negligent misconduct is further underscored by the fact that KMR continues to hold onto possession of the Escrow Funds despite the fact that it is no longer the Escrow Agent.[7] As such, the terms and conditions of the Escrow Agreements expressly preclude KMR from seeking indemnity from GNIC here. (See Escrow Agreements, Exhibits "6" and "7", ¶ 3.2.)

Moreover, KMR's breach of the Escrow Agreements renders the indemnity provisions ineffectual against GNIC. See Morgan v. McCaffrey, 14 A.D.3d 670, 671, 789 N.Y.S.2d 274, 276 (2d Dep't 2005) (party relieved of performance where other party has breached contract); Melodies, Inc. v. Mirabile, 7 A.D.2d 783, 179 N.Y.S.2d 991 (3d Dep't 1958) (breach of contract "excuses the obligee from the duty of further performance"); Hartzell v. Burdick, 91 Misc.2d 758, 760, 398 N.Y.S.2d 649, 650 (N.Y. City. Ct. 1977) ("A breach of contract by one party relieves the other from obligations under it and renders the covenants unenforceable by the one who has breached it") (citations omitted); .

Accordingly, KMR's claims for indemnity against GNIC must be dismissed as a matter of law.

---

[7] There is nothing that precluded KMR from depositing the Escrow Funds with the Court upon the filing of this interpleader action. Indeed, 28 U.S.C. § 1335 -- the statute that KMR commenced the present action under -- specifically calls for KMR to have "deposited" such funds "in the registry of the court" in order for this Court to have proper statutory interpleader jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should issue an order that: (1) Great Northern Insurance Company is entitled to the Escrow Funds as a matter of law and that such proceeds should be immediately returned to it by Katten Muchin Rosenman LLP; (2) Katten Muchin Rosenman LLP's claims for indemnity against Great Northern Insurance Company are dismissed as a matter of law; and (3) for such other relief as the Court deems just and proper.

Dated: New York, New York
      May 17, 2007

MOUND COTTON WOLLAN & GREENGRASS

By: _____
Lloyd A. Gura (LG-0500)
Matthew J. Lasky (ML-6666)
One Battery Park Plaza
New York, NY 10004-1486
212-804-4200
*Attorneys for Defendant Great Northern Insurance Company*

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

Darlene M. Cho, being duly sworn, deposes and says:

Deponent is not a party to this action, is over the age of 18 years, and resides in Bronx, New York 10468. That on the 17th day of May, 2007 deponent served the annexed Defendant Great Northern Insurance Company's Memorandum of Law in Support of Its Summary Judgment Motion upon Michael J. Verde, Esq., Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585, attorneys for plaintiff and David J. Mark, Esq., Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP, International Plaza, 750 Lexington Avenue, New York, NY 10022-1200, attorneys for defendants Kayvan Hakim and Yasmine Hakimat the address designated by said attorneys by depositing the same enclosed in a postpaid properly addressed wrapper directed to each of said attorneys at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
DARLENE M. CHO

Sworn to before me this
17th day of May, 2007

_____
Notary Public

KATHRYN ALBA
NOTARY PUBLIC, State of New York
No. 01AL4733320
Qualified in Richmond County
Commission Expires August 31, 20 09