UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
KATTEN MUCHIN ROSENMAN LLP,            Index No. 07-CV-2921-BSJ

               Plaintiff

   -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

               Defendants.
------------------------------------------------------------------X

## DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S RULE 56.1 STATEMENT OF FACTS IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION

Pursuant to Rule 56.1 of the Local Civil Rules of the United States District Court for the Southern District of New York, and in support of its motion for summary judgment, Defendant Great Northern Insurance Company ("GNIC"), through undersigned counsel, respectfully submits the following statement of material facts as to which there is no genuine issue:

1.    On April 11, 2007, Plaintiff Katten Muchin Rosenman LLP ("KMR") commenced this interpleader action to determine the rightful owner to $150,000 in escrow funds (the "Escrow Funds") currently in the possession of KMR. (See Exhibit "1".)

2.    On May 2, 2007, GNIC filed its answer to KMR's complaint. (See Exhibit "2".)

3.    GNIC provided Defendants Kayvan and Yassmine Hakim (the "Hakims") with home owner's insurance under Policy No. 11331603-01 (12/12/97-12/12/98) (the "Policy"). (See Exhibit "3".)

4.    On September 19, 1998, the Hakims notified GNIC that a fire had occurred at their secondary residence located at 13 Nickelson Road, South Egremont, Massachusetts (the

"Residence") on that same day. The Residence and its contents were destroyed by this fire. (See Exhibits "4" and "5", ¶ 3.)

5. The Policy's stated limits under the "Deluxe House Coverage" is $209,000 with an "Extended Replacement Cost" basis. (See Exhibit "3", "Coverage Summary Renewal".)

6. The Policy's "Extended replacement cost" provision provides that: "[i]f the payment basis is extended replacement cost, we will pay the reconstruction cost even if this amount is greater than the amount of coverage shown in your policy." (Exhibit "3", p. B-1.) The Policy thereafter provides that "[i]f you do not repair, replace or rebuild your house or other permanent structure at the same location or some other location within the Commonwealth of Massachusetts within two years from the date of loss, the payment basis will be verified replacement cost." (Id., p. B-2.) Further, the Policy states that: "[i]f the payment basis is verified replacement cost, we will pay the reconstruction cost of your house up to the amount of coverage shown in the Coverage Summary[.]" (Id., p. B-2.)

7. The Policy's stated limits for the Residence under the "Deluxe Contents Coverage" is $104,500 with a "Replacement Cost" basis. (See id., "Coverage Summary Renewal".)

8. Under the "Deluxe Contents Coverage", "[i]f the payment basis is replacement cost, we will pay the full cost to replace the contents … up to the amount of coverage." (Policy, Exhibit "3", p. C-2.) The Policy further provides that if "after a covered loss to both house and contents, we pay more than the amount of house coverage because of extended replacement cost, we will automatically increase the amount of contents coverage for that loss by the same percentage that we increased the amount of the house coverage." (Id., p. C-1.)

9. On December 15, 2003, the Hakims and GNIC executed one settlement agreement in connection with the Policy's "Deluxe House Coverage" for a total of $788,800 (the "House Settlement"). (See Exhibit "4".)

10. On December 15, 2003, the Hakims and GNIC executed another settlement agreement in connection with the Policy's "Deluxe Contents Coverage" for a total of $387,500 (the "Contents Settlement"). (See Exhibit "5".)

11. Under the House and Contents Settlements respectively, GNIC provided the Hakims partial up-front settlement payments of $230,224.14 and $106,098.85. (Link Aff., ¶ 7; Exhibits "4" and "5", ¶ 9.) )

12. The House and Contents Settlements also required that $150,000 be deposited into escrow, which was to be paid to the Hakims "upon [GNIC's] receipt of an executed contract between the Hakims and a contractor memorializing an agreement to rebuild the Hakims' residence which is the subject of this loss (the "Rebuild Contract")." (Exhibits "4" and "5", ¶¶ 10-11.)

13. The Escrow Funds were further controlled by two December 15, 2003 Escrow Agreements (the "Escrow Agreements"). (See Exhibits "6" and "7".)

14. The Escrow Agreements were expressly incorporated into the House and Contents Settlements. (Exhibits "4" and "5", ¶ 12.)

15. Under the Escrow Agreements, KMR agreed to retain the Escrow Funds:

> in the Escrow Account in accordance with this Agreement and shall disburse the Escrowed Funds to the Hakims at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract, as that term is defined in ¶10 of the Settlement Agreement. <u>In the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC], unless any adverse claim to the Escrowed Funds has been asserted. In such event, the Escrow Agent shall deposit</u>

the Escrowed Funds in a court of competent jurisdiction with respect to such adverse claim(s).

(Exhibits "6" and "7", ¶ 2 (emphasis added).)

16.   The Escrow Agreements also provide that KMR:

shall not be liable for actions or omissions hereunder, expect for its own gross negligence or willful misconduct and, except with respect to claims based upon such gross negligence or willful misconduct that are successfully asserted against [KMR], the Hakims and [GNIC] shall jointly and severally indemnify and hold harmless [KMR] from and against any and all losses, liabilities, claims, actions, damages and expenses, including reasonable attorney' fees and disbursements, arising out of and in connection with this Agreement.

(Exhibits "6" and "7", ¶ 3.2 (emphasis added).)

17.   A year after the various settlement agreements were executed, GNIC contacted KMR (as former counsel to the Hakims) to ask when GNIC could expect to receive the Rebuild Contract. (See Exhibit "8".)

18.   In response, by letter dated December 13, 2004, KMR stated that Mr. Hakim expected to retain a contractor to rebuild the Residence by "mid-February 2005". (See id.)

19.   Over a year and a half later, the Hakims had still not provided the Rebuild Contract to GNIC. Thus, on May 8, 2006, GNIC sent a letter to KMR demanding that it return the Escrow Funds to GNIC. (See Exhibit "9".)

20.   GNIC then contacted KMR by phone, and KMR asserted that they would not voluntarily provide the Escrow Funds to GNIC but would commence an interpleader action to determine the rightful owner of such proceeds. (See Exhibit "11".) Despite multiple assurances by KMR that this action would be timely commenced, months passed and no interpleader action was filed and the Escrow Funds continued to be wrongfully maintained by KMR. (See id.)

21. As a result, by letter dated August 24, 2006, GNIC again demanded that KMR return the Escrow Funds to GNIC or commence the promised interpleader action. (See id.)

22. In February 2007, GNIC called KMR and notified them that GNIC intended to file a breach of contract and conversion action against KMR. (See Exhibit "12".) As a result, by letter dated February 15, 2007, KMR resigned as escrow agent "as of February 23, 2007" and requested that the Hakims and GNIC name a new escrow agent. (See id.)

23. By letter dated February 20, 2007, GNIC informed KMR that it would not name a new escrow agent because the Hakims were not entitled to the Escrow Funds based on their failure to provide the Rebuild Contract to GNIC. (See Exhibit "13".) In this letter, GNIC further demanded that KMR return the Escrow Funds or deposit such proceeds with a court of competent jurisdiction pursuant to KMR's contractual duties. (See id.)

24. By letter dated February 21, 2007, KMR responded that it would "take steps to deliver the entirety of the escrowed funds to a court of competent jurisdiction." (See Exhibit "14".)

25. Finally, on April 11, 2007 (almost a year after GNIC demanded return of the Escrow Funds), KMR commenced the instant interpleader action but did not deposit the Escrow Funds with the court. (See Exhibit "1".)

26. The Hakims have never delivered the Rebuild Contract to GNIC. (Link Aff., ¶ 16.)

27. KMR has neither returned the Escrow Funds to GNIC nor has it deposited such funds in "a court of competent jurisdiction". (Link Aff., ¶ 18.)

Dated: New York, New York
       May 17, 2007

                               MOUND COTTON WOLLAN & GREENGRASS

                               By: _____
                                  Lloyd A. Gura (LG-0500)
                                  Matthew J. Lasky (ML-6666)
                                  One Battery Park Plaza
                                  New York, NY 10004-1486
                                  212-804-4200
                                  *Attorneys for Defendant Great Northern Insurance Company*

AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

Darlene M. Cho, being duly sworn, deposes and says:

Deponent is not a party to this action, is over the age of 18 years, and resides in Bronx, New York 10468. That on the 17th day of May, 2007 deponent served the annexed Defendant Great Northern Insurance Company's Rule 56.1 Statement of Facts in Support of Its Summary Judgment Motion upon Michael J. Verde, Esq., Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585, attorneys for plaintiff and David J. Mark, Esq., Feder, Kaszovitz, Isaacson, Weber, Skala, Bass & Rhine, LLP, International Plaza, 750 Lexington Avenue, New York, NY 10022-1200, attorneys for defendants Kayvan Hakim and Yasmine Hakimat the address designated by said attorneys by depositing the same enclosed in a postpaid properly addressed wrapper directed to each of said attorneys at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
DARLENE M. CHO

Sworn to before me this
17th day of May, 2007

_____
Notary Public

KATHRYN ALBA
NOTARY PUBLIC, State of New York
No. 01AL4733320
Qualified in Richmond County
Commission Expires August 31, 20 09