UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
KATTEN MUCHIN ROSENMAN LLP,                Index No. 07-CV-2921-BSJ

                Plaintiff

    -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                Defendants.
-----------------------------------------------------------------X

### DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS SUMMARY JUDGMENT MOTION AGAINST PLAINTIFF KATTEN MUCHIN ROSENMAN LLP

                              MOUND COTTON WOLLAN & GREENGRASS
                              Attorneys for Defendant
                              Great Northern Insurance Company
                              One Battery Park Plaza
                              New York, NY 10004
                              (212) 804-4200

On the brief:

Lloyd A. Gura
Sanjit Shah

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT................................................................................................................4

    POINT I

        GNIC IS ENTITLED TO SUMMARY JUDGMENT
        DISMISSING KMR'S CLAIMS FOR INDEMNITY
        BECAUSE KMR BREACHED ITS FIDUCIARY DUTIES
        TO GNIC AND VIOLATED THE EXPRESS TERMS OF
        THE ESCROW AGREEMENTS ...................................................4

            A.    KMR Breached Its Fiduciary Duties To GNIC ..........................4

            B.    KMR Breached The Escrow Agreements
                  By Not Depositing The Funds Into A Court
                  Of Competent Jurisdiction In May 2006 ...................................7

            C.    KMR Breached The Escrow Agreements
                  By Not Depositing The Funds In Court
                  Upon Receiving Notice That A Successor
                  Escrow Agent Would Not Be Appointed.....................................8

CONCLUSION.............................................................................................................9

# TABLE OF AUTHORITIES

**Cases**

Ansonia Realty Co. v. Ansonia Assocs.,
142 A.D.2d 514, 530 N.Y.S.2d 149 (1st Dep't 1988) ...................................................... 6

Carruthers v. Flaum, 450 F. Supp. 2d 288 (S.D.N.Y. 2006) ......................................... 4

Goldstein v. Alfred V. Greco, PLLC, Index No. 017426/00,
2001 WL 1422349 (N.Y. Sup. Ct. Aug. 21, 2001) ......................................................... 4

Grinblat v. Taubenblat, 107 A.D.2d 735,
484 N.Y.S.2d 96 (2d Dep't 1985) .............................................................................. 4, 6

Lindley v. Robillard, 208 Misc. 532,
144 N.Y.S.2d 33 (N.Y. Sup. Ct. 1955) ........................................................................... 4

Takayama v. Schaefer, 240 A.D.2d 21,
669 N.Y.S.2d 656 (2d Dep't 1998) ............................................................................ 4, 5

**Statutes**

28 U.S.C. § 1335 ............................................................................................................. 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KATTEN MUCHIN ROSENMAN LLP,                Index No. 07-CV-2921-BSJ

                Plaintiff
                                                             **ORAL ARGUMENT REQUESTED**

   -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------X

## DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS SUMMARY JUDGMENT MOTION AGAINST PLAINTIFF KATTEN MUCHIN ROSENMAN LLP

Defendant Great Northern Insurance Company ("GNIC") submits this reply memorandum of law in further support of its motion for summary judgment against Plaintiff Katten Muchin Rosenman LLP ("KMR").

### PRELIMINARY STATEMENT

In its opposition to the summary judgment motion of GNIC, KMR acknowledges that escrow agents such as itself owe fiduciary duties to <u>all</u> stakeholders, and contends that it fulfilled those duties even though it delayed commencing this interpleader action for nearly a year. But by failing to commence this action in May 2006, after GNIC demanded the return of the escrowed funds, and Kayvan and Yassmine Hakim (the "Hakims") opposed that demand and expressed their intention to rebuild their Massachusetts residence, KMR unilaterally gave additional time to the Hakims -- its former clients -- within which to submit a contract to rebuild (the "Rebuild Contract"). Essentially, KMR, consistent with its long-held position that the Hakims were entitled to submit the Rebuild Contract to GNIC anytime they wished, favored one

stakeholder over the other, as KMR was aware of GNIC's expressed position that the deadline for submitting the Rebuild Contract had passed.

KMR's intention to release the escrowed funds to the Hakims upon their submission of the Rebuild Contract, even if that occurred months after GNIC asserted that the Hakims no longer had any right to the monies, is evidenced by KMR's February 15, 2007 resignation letter. There, KMR noted that the relevant agreements did not specify a time within which the Hakims had to submit the Rebuild Contract, and that "[t]o date, [the Rebuild Contract] has not been submitted by the Hakims . . . ."[1] Basically, in its letter, KMR sided with the Hakims, implying that the deadline to submit the Rebuild Contract had not expired. Had the Hakims submitted a Rebuild Contract to GNIC between May 12, 2006 and February 15, 2007, i.e., after the dispute over ownership of the escrowed funds arose, it seems clear that KMR would have released the monies to its former clients. Under these circumstances, KMR breached its fiduciary duties to GNIC. Accordingly, KMR's claims for indemnity should be dismissed as a matter of law.

Moreover, contrary to KMR's contention, it did not comply with the express terms of the escrow agreements among the parties. First, the agreements obligate the escrow agent to deposit the funds into a court of competent jurisdiction in the event that an adverse claim to the monies is made. There was indisputably an adverse claim in May 2006, when GNIC demanded the return of the escrowed funds and the Hakims disputed GNIC's right thereto. Had KMR acted in accordance with the escrow agreements, it would have immediately deposited the money in a court of competent jurisdiction. Instead, it waited until after it filed this action -- and after GNIC moved for summary judgment -- to do so.

Second, the escrow agreements provide that if a resigning escrow agent does not receive notice of the appointment of a successor within thirty days of its resignation, it must deliver the

---

[1]    Exhibit 12 to the May 17, 2007 Affidavit of Robert Link (the "Link Aff.") (emphasis added).

escrow funds to a court of competent jurisdiction. KMR advised the parties in its February 15, 2007 letter that its resignation as escrow agent would be effective as of February 23, 2007. By letter dated February 20, 2007, GNIC's counsel notified KMR that it had no intention of appointing a successor to KMR because the Hakims no longer had any right to the escrowed funds, and demanded that the funds be returned to it or deposited in New York Supreme Court, New York County.

      Having failed -- in clear violation of the escrow agreements -- to deposit the escrow funds into the registry of the Court in May 2006, KMR should nevertheless have delivered the monies to the Court upon receipt of the February 20, 2007 letter from GNIC's counsel, when it knew that a successor escrow agent would not be appointed. At the very latest, KMR should have deposited the funds into the Court's registry by March 23, 2007 -- thirty days from the effective date of KMR's purported resignation. Instead, it waited until May 24, 2007, <u>more than one month after it commenced this action, and one week after GNIC moved for summary judgment</u>. Notably, KMR held onto the escrowed funds even though it was no longer the escrow agent -- essentially converting those funds for a period of time. KMR's wrongful delay in depositing the funds with the court not only violated the terms of the escrow agreements, but also 28 U.S.C. § 1335, which conditions the interpleader jurisdiction of the district courts upon the deposit of disputed funds into the court's registry. KMR's assertion that it did "exactly what the Escrow Agreements mandated that it do,"[2] is therefore entirely without merit.

---

[2]     KMR's memorandum of law in opposition to GNIC's summary judgment motion ("KMR Memorandum"), at 5.

3

## ARGUMENT

## POINT I

### GNIC IS ENTITLED TO SUMMARY JUDGMENT DISMISSING KMR'S CLAIMS FOR INDEMNITY BECAUSE KMR BREACHED ITS FIDUCIARY DUTIES TO GNIC AND VIOLATED THE EXPRESS TERMS OF THE ESCROW AGREEMENTS

A.   <u>KMR Breached Its Fiduciary Duties To GNIC</u>

It is well-settled that in addition to its contractual obligations, an escrow agent owes a fiduciary duty to all stakeholders. See <u>Carruthers v. Flaum</u>, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006) ("An escrow agreement imposes a fiduciary duty on the escrow agent to both parties . . . ."); <u>Takayama v. Schaefer</u>, 240 A.D.2d 21, 25, 669 N.Y.S.2d 656, 659 (2d Dep't 1998) ("An escrow agent not only has a contractual duty to follow the escrow agreement, but additionally becomes a trustee of anyone with a beneficial interest in the trust."); <u>Grinblat v. Taubenblat</u>, 107 A.D.2d 735, 736, 484 N.Y.S.2d 96, 97 (2d Dep't 1985) ("As a fiduciary, defendant [escrow agent] had a strict obligation to protect the rights of both parties.").

Where there is uncertainty about which party has the right to the escrowed funds, the appropriate course of action is for the escrow agent to commence an interpleader action. <u>Goldstein v. Alfred V. Greco, PLLC</u>, Index No. 017426/00, 2001 WL 1422349 (N.Y. Sup. Ct. Aug. 21, 2001) ("If defendant had any doubt as to who was entitled to possession of the stock certificate, endorsement and stock power, interpleader was a remedy available to him."); <u>Lindley v. Robillard</u>, 208 Misc. 532, 537, 144 N.Y.S.2d 33, 37 (N.Y. Sup. Ct. 1955) ("However, if the escrow agent was uncertain as to which of the claimants was entitled to payment, it had available a remedy in the nature of interpleader by which it could have deposited the fund into court and been relieved of further liability to the parties.").

Although the failure of an escrow agent to commence an interpleader action is not necessarily the basis of an escrowee's liability, see Takayama, 240 A.D.2d at 26, 669 N.Y.S.2d at 659, the circumstances of this case demonstrate that by not commencing an interpleader action in May 2006, KMR breached its fiduciary duties to GNIC.

By May 12, 2006, the respective positions of GNIC and the Hakims were clear, and had been unequivocally communicated to KMR. In its May 8, 2006 letter to KMR, GNIC contended that it was entitled to the immediate return of the escrowed monies because the time within which the Hakims had to submit the Rebuild Contract had expired:

> Both Escrow Agreements provide that KMZR "shall disburse the Escrow Funds at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract." (Escrow Agreements, ¶ 2.) The contracts further provide that "[i]n the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disperse the Escrow Funds to [GNIC], unless any adverse claim to the Escrow Funds has been asserted." (Id.) The Rebuild Contract has never been provided to GNIC, despite over two and a half years passing since the Escrow Agreements were executed. Accordingly, GNIC hereby demands the return of the Escrow Funds.

(Link Aff. Ex. 9.)

The Hakims, through their new counsel, responded by letter dated May 12, 2006 (a copy of which was sent to KMR), in which they expressed their intention to rebuild the Massachusetts property, and called GNIC's demand for the return of the escrowed funds premature:

> We are the attorneys for Kayvan and Yassmine Hakim (the "Hakims"). I am writing in response to your letter of May 8, 2006 to Michael Gallagher to advise you that the Hakims fully intend to rebuild the residence that is the subject of the policy and settlement agreements referred to in your letter.
>
> Accordingly, GNIC's demand for return of the escrowed funds is premature.

(Link Aff. Ex. 10.)

Having been made aware of the dispute concerning the ownership of the escrowed funds, it was incumbent upon KMR as a neutral fiduciary to commence an interpleader action

5

immediately. By not doing so, and continuing to hold the monies in escrow despite repeated demands by GNIC to either return the funds or commence an interpleader action (Link Aff. Ex. 11), KMR unilaterally gave its former clients, the Hakims, additional time to submit the Rebuild Contract. The Hakims made it clear to KMR in the May 12, 2006 letter that they needed the additional time in view of their professed intention to rebuild the Massachusetts residence. (Link Aff. Ex. 10.)

KMR's unwavering allegiance to its former clients at the expense of GNIC constituted a breach of its fiduciary duties. See Grinblat, 107 A.D.2d at 736, 484 N.Y.S.2d at 97. It appears likely that KMR would have released the disputed funds to the Hakims upon their submission of a Rebuild Contract at any time, even after GNIC demanded the return of the monies. In this regard, KMR's February 15, 2007 letter of resignation observed that none of the relevant agreements specified a date by which the Rebuild Contract had to be submitted, and the Hakims had not provided such a contract "to date," implying that the deadline for submitting the Rebuild Contract had not expired despite GNIC's claim to the contrary:

> As part of the resolution of the claim, Katten agreed to hold $150,000 in escrow pending Great Northern's receipt of a contract between the Hakims and a contractor memorializing an agreement to rebuild the Hakims' residence. Notably, neither the Settlement Agreements nor the Escrow Agreements specify a time within which the Hakims must produce that contract. To date, that contract has not been submitted by the Hakims, although, by letter dated February 14, 2007, the Hakims' counsel has stated that he anticipates that the contract will be executed and available to Great Northern by the end of May 2007.

(Link Aff. Ex. 12.)

Because KMR breached its fiduciary duties as escrow agent (and indeed, held onto the funds well after it had ceased being escrow agent), it engaged in willful misconduct, and its indemnity claim should be dismissed as a matter of law. See Ansonia Realty Co. v. Ansonia Assocs., 142 A.D.2d 514, 517, 530 N.Y.S.2d 149, 152-53 (1st Dep't 1988) (holding that escrow

agent was liable under contract imposing liability only for bad faith or willful misconduct, where agent failed to act neutrally and favored one party over the other).[3]

B.  KMR Breached The Escrow Agreements By Not Depositing
    The Funds Into A Court Of Competent Jurisdiction In May 2006

The Escrow Agreements explicitly provide that in the event of any adverse claim to the escrowed funds, KMR shall deposit the monies in a court of competent jurisdiction:

> The Escrow Agent shall retain the Funds and any interest thereon (the "Escrowed Funds") in the Escrow Account in accordance with this Agreement and shall disburse the Escrowed Funds to the Hakims at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract, as that term is defined in ¶10 of the Settlement Agreement. _In the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC], unless any adverse claim to the Escrowed Funds has been asserted. In such event, the Escrow Agent shall deposit the Escrowed Funds in a court of competent jurisdiction with respect to such adverse claim(s)._

(Link Aff. Exs. 6 and 7 ¶ 2 (emphasis added).)

As discussed in Point I.A., supra, an adverse claim to the escrowed funds had arisen as of May 12, 2006. At that juncture, therefore, KMR was obligated to deposit the funds in a court of competent jurisdiction, but failed to do so for more than a year. Such a breach of the escrow agreements, constituting as it did a breach of fiduciary duty, can only be characterized as willful misconduct, or, at best, gross negligence. Accordingly, KMR is not entitled to indemnification, and its claim for expenses, including attorneys' fees and disbursements, arising out of its service as an escrow agent should be dismissed.

---

[3]  KMR's argument that "GNIC was always free to begin an action against the Hakims to determine the rights of the stakeholders in light of the Hakims' alleged failure to provide a Rebuild Contract in a timely manner" (KMR Memorandum at 5), ignores that KMR was a fiduciary and, as such, obligated to take appropriate action to protect the rights of both stakeholders once conflicting claims to the escrowed funds were made. The Court should not countenance KMR's attempt to eschew its fiduciary responsibilities.

7

C.      **KMR Breached The Escrow Agreements By Not Depositing The Funds In Court Upon Receiving Notice <u>That A Successor Escrow Agent Would Not Be Appointed</u>**

Upon resigning as escrow agent, KMR was required to deliver the escrowed funds to a court of competent jurisdiction if, within thirty days of its resignation, it had not received notice of the appointment of a successor:

> Such resigning or removed Escrow Agent shall deliver the entirety of the Escrowed Funds to (i) any successor Escrow Agent or (ii) if it shall not have received any notice of the appointment of such successor within 30 days of its resignation or removal, to any court of competent jurisidiction.

(Link Aff. Exs. 6 and 7 ¶ 3.7(d).)

In its February 15, 2007 letter purporting to resign as escrow agent effective February 23, 2007, KMR requested that GNIC and the Hakims "advise of the parties' choice for the new escrow agent" pursuant to section 3.7 of the escrow agreements. (Link Aff. Ex. 12.) By letter dated February 20, 2007, GNIC's counsel notified KMR in clear and unequivocal terms that GNIC would not appoint a successor escrow agent. (Link Aff. Ex. 13.) In response, KMR advised GNIC and the Hakims that in the event it did not receive notice of a new escrowee within 30 days of February 23, 2007, it would "take steps to deliver the entirety of the escrowed funds to a court of competent jurisdiction." (Link Aff. Ex. 14.)

But in view of GNIC's unambiguous intention not to appoint a successor escrow agent, KMR should have deposited the escrow funds in a court of competent jurisdiction upon receipt of the February 20, 2007 letter from GNIC's counsel. (Link Aff. Exs. 6 and 7 ¶ 3.7) Failing to do that, it should have delivered the funds to a court of competent jurisdiction within thirty days of February 23, 2007, <u>i.e.</u>, March 23, 2007. (<u>Id.</u>) Instead, KMR wrongfully held onto the money for much longer than it was authorized to do so under the escrow agreements -- more than one year longer -- and long after it had ceased serving as the escrow agent. Indeed, had GNIC not

8

moved for summary judgment, it is likely that KMR would still be in possession of the disputed monies -- continuing its conversion of such funds.

When considering the totality of the circumstances, including KMR's bias towards its former clients, and its wanton disregard of express provisions in the escrow agreements, the only conclusion that can be drawn is that KMR is not entitled to reimbursement of its expenses, including attorneys' fees and disbursements, arising out of its service as escrow agent.

## CONCLUSION

For the reasons set forth herein, and in GNIC's moving papers, this Court should grant GNIC's motion for summary judgment dismissing KMR's claims for indemnity and order that the escrowed funds be delivered to GNIC.

Dated: New York, New York
       June 11, 2007

MOUND COTTON WOLLAN & GREENGRASS

By:   s/ Lloyd A. Gura
      Lloyd A. Gura (LG-0500)
      Sanjit Shah (SS-0148)
      One Battery Park Plaza
      New York, NY 10004-1486
      212-804-4200
      *Attorneys for Defendant Great Northern Insurance Company*

9

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

Irene J. Siegel, being duly sworn, deposes and says:

Deponent is not a party to this action, is over the age of 18 years, and resides in Queens, New York. That on the 11th day of June, 2007 deponent served the annexed **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT** on Michael J. Verde, Esq., Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585, plaintiff pro se, David J. Mark, Esq., Kasowitz, Benson, Torres & Friedman, LLP, 1633 Broadway, New York, New York, 10019, and Justine Clare Moran, Esq., 31-12 38th Street, Astoria, New York, 11103, attorneys for defendants Kayvan Hakim and Yasmine Hakim at the address designated by said attorneys by depositing the same enclosed in a postpaid properly addressed wrapper directed to each of said attorneys at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
IRENE J. SIEGEL

Sworn to before me this
11th day of June, 2007

_____
Notary Public

RODANTHI KUCHARSKI
Notary Public State of New York
No. 24-4711680
Qualified in Kings County
Commission Expires October 31, 2010