UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
KATTEN MUCHIN ROSENMAN LLP,                Index No. 07-CV-2921-BSJ

                  Plaintiff

  -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                  Defendants.
-------------------------------------------------------------------- X

## DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS SUMMARY JUDGMENT MOTION, AND IN REPLY TO THE OPPOSITION PAPERS OF KAYVAN AND YASSMINE HAKIM

MOUND COTTON WOLLAN & GREENGRASS
Attorneys for Defendant
Great Northern Insurance Company
One Battery Park Plaza
New York, NY 10004
(212) 804-4200

On the brief:

Lloyd A. Gura
Sanjit Shah

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................1

ARGUMENT.........................................................................................................2

    POINT I

        THE HAKIMS WERE CONTRACTUALLY
        OBLIGATED TO SUBMIT A REBUILD CONTRACT
        WITHIN TWO YEARS OF THEIR EXECUTION
        OF THE DECEMBER 15, 2003 AGREEMENTS ..........................................2

            A.    Because The Material Facts
                  Are Undisputed, GNIC's Motion For
                  Summary Judgment Should Be Granted ....................................2

            B.    GNIC Is Not Seeking Specific Performance..............................7

    POINT II

        THE HAKIMS SHOULD BEAR THEIR
        OWN COSTS IN OPPOSING THIS MOTION................................................9

CONCLUSION....................................................................................................11

# TABLE OF AUTHORITIES

## Cases

ADC Orange, Inc. v. Coyote Acres, Inc.,
7 N.Y.3d 484, 824 N.Y.S.2d 192 (2006) ..................................................................................8

Citizens Bank & Trust Co. v. Se-Fish Associates,
No. 99-CV-0417E(SR), 2003 WL 22383564
(W.D.N.Y. Sept. 30, 2003) .......................................................................................................9

Enzo Biochem, Inc. v. Johnson & Johnson,
No. 87 Civ. 6125 (KMW), 1992 WL 309613..........................................................................3
(S.D.N.Y. Oct. 15, 1992)

Frederes v. Ferguson (In re Frederes),
108 B.R. 419 (Bankr. W.D.N.Y. 1990) .................................................................................3, 7

Hellstrom v. U.S. Dep't of Veterans Affairs,
201 F.3d 94 (2d Cir. 2000).......................................................................................................9

Lee Loi Indus., Inc. v. Impact Brokerage Corp.,
473 F. Supp. 2d 566 (S.D.N.Y. 2007)...................................................................................6 n.3

Mercantile Nat'l Bank v. Heinze,
75 Misc. 551, 135 N.Y.S. 962 (N.Y. Sup. Ct. 1912) ................................................................8

Mohen v. Mooney, 162 A.D.2d 664,
557 N.Y.S.2d 108 (2d Dep't 1990)...........................................................................................8

NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,
262 F. Supp. 2d 134 (S.D.N.Y. 2003)...............................................................................7 n.4, 10

Schmidt v. McKay,
555 F.2d 30 (2d Cir. 1977) .......................................................................................................2

Smith Barney, Harris Upham & Co. v. Liechtensteinische Landesbank,
866 F. Supp. 114 (S.D.N.Y. 1994) ...........................................................................2, 3 n.2, 5, 7

Zev v. Merman, 134 A.D.2d 555,
521 N.Y.S.2d 455 (2d Dep't 1987)...........................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
KATTEN MUCHIN ROSENMAN LLP,                    Index No. 07-CV-2921-BSJ

                Plaintiff
                                                                    **ORAL ARGUMENT REQUESTED**
   -against-

KAYVAN HAKIM, YASSMINE HAKIM and
GREAT NORTHERN INSURANCE COMPANY,

                Defendants.
------------------------------------------------------------------ X

**DEFENDANT GREAT NORTHERN INSURANCE
COMPANY'S MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS SUMMARY JUDGMENT MOTION, AND IN REPLY
TO THE OPPOSITION PAPERS OF KAYVAN AND YASSMINE HAKIM**

Defendant Great Northern Insurance Company ("GNIC") submits this memorandum of law in further support of its motion for summary judgment against Plaintiff Katten Muchin Rosenman LLP ("KMR"), and in reply to the opposition papers of Kayvan and Yassmine Hakim (the "Hakims").

**PRELIMINARY STATEMENT**

Ignoring relevant decisions from the Second Circuit and this Court, the Hakims erroneously contend not only that GNIC's summary judgment motion should be denied, but also that GNIC should essentially be sanctioned for "filing a frivolous and premature motion . . . ."[1] Chutzpah, however, is no substitute for careful legal analysis. Because the law implies a reasonable time for performance where that contract term is missing, and all material facts are undisputed, the question of what is a reasonable time for the Hakims to submit a contract to

---

[1] Hakims' memorandum of law in opposition to GNIC's motion for summary judgment (the "Hakim Memorandum"), at 5.

rebuild their Massachusetts residence (the "Rebuild Contract"), is one of law for the Court to decide. While it is understandable that the Hakims want GNIC's money to remain in escrow in perpetuity, the facts demonstrate that the Hakims were obligated to submit a Rebuild Contract to GNIC within two years of their execution of the December 15, 2003 settlement and escrow agreements. Inasmuch as that time has long passed, GNIC's motion for summary judgment should be granted.

Contrary to the Hakims' claim, GNIC's summary judgment motion is neither frivolous nor premature. GNIC's refusal to appoint a successor escrow agent was not a breach of the escrow agreements because KMR had already materially breached those agreements by failing to deposit the escrow funds into the Court's registry when an adverse claim to the monies was asserted in May 2006. Accordingly, GNIC did not commit "rash actions" or act with "poor judgment," and the Hakims should be made to bear their own costs.

## ARGUMENT

### POINT I

**THE HAKIMS WERE CONTRACTUALLY OBLIGATED TO SUBMIT A REBUILD CONTRACT WITHIN TWO YEARS OF THEIR EXECUTION OF THE DECEMBER 15, 2003 AGREEMENTS**

A.  Because The Material Facts Are Undisputed, GNIC's Motion For Summary Judgment Should Be Granted

Under New York law, it is well-settled that where a contract does not specify a time for performance, a reasonable time is implied. Schmidt v. McKay, 555 F.2d 30, 35 (2d Cir. 1977) ("Since the alleged contract did not specify a time for MEBA's performance, under New York law appellees were entitled to a reasonable time in which to attempt to reach an agreement with the trustees."); Smith Barney, Harris Upham & Co. v. Liechtensteinische Landesbank, 866 F.

2

Supp. 114, 117 (S.D.N.Y. 1994) ("Under New York law, where a contract is silent regarding the time for performance, a duty to perform within a reasonable time is implied . . . ."); Enzo Biochem, Inc. v. Johnson & Johnson, No. 87 Civ. 6125 (KMW), 1992 WL 309613, at *6 (S.D.N.Y. Oct. 15, 1992) ("Furthermore, under New York law, where a contract is silent regarding the time for performance, the law will imply a duty to perform within a 'reasonable time.'") (internal quotations omitted, citing Lee v. Joseph E. Seagram & Sons, Inc., 413 F. Supp. 693, 698 (S.D.N.Y. 1976), aff'd, 552 F.2d 447 (2d Cir. 1977)); Frederes v. Ferguson (In re Frederes), 108 B.R. 419, 421 (Bankr. W.D.N.Y. 1990) ("When a contract does not specify a time for performance, a reasonable one will be implied.") (citing Schmidt, 555 F.2d at 35).[2]

"The question of what is a reasonable period of time for performance of a particular contract is a question of fact for a jury, <u>unless the facts are undisputed, in which case the question becomes one appropriate for summary judgment</u>." Enzo Biochem, Inc., 1992 WL 309613, at *6 (emphasis added).

The instant case is ripe for summary judgment because, the following material facts are undisputed:

- GNIC provided the Hakims with homeowner's insurance under Policy No. 11331603-01 covering the period from December 12, 1997 to December 12, 1998 (the "Policy"). (Compare GNIC's Rule 56.1 Statement ¶ 3 with the Hakims' Statement Of Facts As To Which There Exist Genuine Issues To Be Tried ("Hakims' Rule 56.1 Statement") ¶ 3, and KMR's Statement Of Material Facts As To Which There Exist Genuine Issues To Be Tried ("KMR's Rule 56.1 Statement") ¶ 3.)

- On September 19, 1998, the Hakims notified GNIC that earlier that day their house in Massachusetts and its contents had been destroyed by a fire. (Compare GNIC's Rule 56.1 Statement ¶ 4 with the Hakims' Rule 56.1 Statement ¶ 4, and KMR's Rule 56.1 Statement ¶ 4.)

---

[2]   The only exception to this principle is where the parties negotiated over, and rejected, a particular contract term. See Smith Barney, 866 F. Supp. at 117. Here, inasmuch as there is no evidence that the parties negotiated over, and rejected, a term governing the time within which the Hakims had to submit the Rebuild Contract, a duty to submit such an agreement within a reasonable time is implied. Id.

3

- The Policy had a $209,000 limit of liability for loss to the house (Deluxe House Coverage), and a $104,500 limit of liability for loss to the contents (Deluxe Contents Coverage). Nevertheless, the Hakims were entitled to recover amounts greater than those limits if the payment basis for loss to their house was "extended replacement cost." In order for the Hakims to be entitled to payment on an extended replacement cost basis, i.e., more than the Policy's express $313,500 aggregate limit for house and contents coverage, they were obligated to repair, replace or rebuild their house at the same or another location in the State of Massachusetts within two years of September 19, 1998. (Compare GNIC's Rule 56.1 Statement ¶¶ 5-8 with the Hakims' Rule 56.1 Statement ¶¶ 5-8, and KMR's Rule 56.1 Statement ¶¶ 5-8.)

- On December 15, 2003, the Hakims and GNIC executed two settlement agreements (the "Settlement Agreements") pursuant to which the total amount to be paid to the Hakims for loss caused by the September 19, 1998 fire would be $788,800 under the Deluxe House Coverage section, and $387,500 under the Deluxe Contents Coverage section. (Compare GNIC's Rule 56.1 Statement ¶¶ 9-10 with the Hakims' Rule 56.1 Statement ¶¶ 9-10, and KMR's Rule 56.1 Statement ¶¶ 9-10.)

- Under the Settlement Agreements, GNIC made partial payments to the Hakims totaling $336,322.99, and placed $150,000 in escrow pursuant to two escrow agreements dated December 15, 2003 among GNIC, the Hakims and KMR (the "Escrow Agreements"). KMR, as escrowee, was not permitted to release the funds to the Hakims unless they submitted the Rebuild Contract to GNIC. (Compare GNIC's Rule 56.1 Statement ¶¶ 11-15 with the Hakims' Rule 56.1 Statement ¶¶ 11-15, and KMR's Rule 56.1 Statement ¶¶ 11-15.)

- The Settlement Agreements and the Escrow Agreements were silent as to the time within which the Hakims were obligated to submit the Rebuild Contract to GNIC. (See Settlement Agreements and Escrow Agreements, annexed as Exhibits 4-7 to the May 17, 2007 Affidavit of Robert Link (the "Link Aff.").)

- By letter dated December 13, 2004, KMR, as counsel to the Hakims, expressed its understanding that GNIC "will keep its file on this matter open until at least mid-February 2005 and will take no action on the escrowed funds . . . before that time" in view of the Hakims' expectation of retaining a contractor to rebuild the Massachusetts house by mid-February 2005. (See December 13, 2004 letter from KMR to Robert Link, annexed as Exhibit 8 to the Link Aff.)

- The Hakims have still not submitted a Rebuild Contract. (Compare GNIC's Rule 56.1 Statement ¶ 26 with the Hakims' Rule 56.1 Statement ¶ 26, and KMR's Rule 56.1 Statement ¶ 26.)

"In determining what constitutes a reasonable time for performance, courts consider several factors, including: (1) the nature and object of the contract; (2) the previous conduct of the parties; (3) the presence or absence of good faith; [and] (4) the experience of the parties and

4

the possibility of prejudice or hardship to either one." Smith Barney, 866 F. Supp. at 117 (granting summary judgment to defendant on issue of what constituted a reasonable time for performance where contract was silent). When these factors are applied here, it is clear that a reasonable time for the Hakims to have submitted the Rebuild Contract was two years from the date of the December 15, 2003 Settlement Agreements.

First, the nature and object of the Settlement Agreements, executed on December 15, 2003, was to allow the Hakims to recover in excess of stated Policy limits even though they did not repair, replace or rebuild their house at the same or another location in the State of Massachusetts within two years of the September 19, 1998 loss. But having obtained additional time to recover amounts in excess of the Policy's limits (to say nothing of the partial payments in excess of those limits that the Hakims received from GNIC), it would be unreasonable for the Hakims to keep GNIC's money tied-up in perpetuity while they spend years searching for a contractor to rebuild their Massachusetts residence. Almost nine years after the loss, the Hakims still have not submitted the Rebuild Contract, and no reasonable interpretation of the Settlement Agreements would permit them to recover the escrowed funds by submitting it now.

Second, the previous conduct of the parties demonstrates that a reasonable time for submitting the Rebuild Contract is two years from the execution of the Settlement Agreements. In this regard, the Policy required that the damaged property be repaired, replaced or rebuilt within two years of the loss. Moreover, in its December 13, 2004 letter, KMR expressed its understanding that GNIC would take no action on the escrowed funds until at least mid-February 2005, indicating that the Hakims were well-aware that the time within which they had to submit a Rebuild Contract was not open-ended, and indeed, due to expire shortly. (Link Aff. Ex. 8.) This letter, sent by the Hakims' counsel at the time, belies the assertion in Kayvan Hakim's June

13, 2007 Declaration (the "Hakim Decl.") that he "did not contemplate completing [his] performance under the Agreements within a specific time frame . . . ." (Hakim Decl. ¶ 3.)[3]

Third, the presence or absence of good faith weighs strongly in favor of GNIC. The absence of the Hakims' good faith is demonstrated by their failure to deliver the Rebuild Contract despite multiple assurances that they would do so by various dates. (See Link Aff. Ex. 8 (stating that the Hakims expected to hire a contractor to rebuild their Massachusetts house by mid-February 2005); Link Aff. Ex. 10 (stating by letter dated May 12, 2006 that the Hakims "fully intend to rebuild the residence"); Link Aff. Ex. 12 (stating that "the Hakims' counsel has stated that he anticipates that the contract will be executed and available to Great Northern by the end of May 2007").) By contrast, GNIC's good faith is shown by its decision not to demand the escrowed funds until May 8, 2006, more than two years after the Settlement Agreements were executed, nearly eight years after the Hakims' house was destroyed, and more than one year after mid-February 2005 -- when the Hakims said they would deliver the Rebuild Contract.

Fourth, and finally, the Hakims cannot reasonably argue that they will suffer any prejudice or hardship by the disbursement of the escrowed funds to GNIC. The Hakims' contention that an order granting GNIC's motion "may leave the Hakims without a remedy" (Hakim Memorandum, at 4), is demonstrably false in view of the undisputed fact that they have already recovered $336,322.99 from GNIC -- more than the Policy limits under the Deluxe House Coverage and Deluxe Contents Coverage sections -- despite their failure to deliver the

---

[3] To the extent that Kayvan Hakim's declaration conflicts with the December 13, 2004 letter of his then-counsel (Link Aff. Ex. 8), the declaration may be disregarded. Lee Loi Indus., Inc. v. Impact Brokerage Corp., 473 F. Supp. 2d 566, 570 (S.D.N.Y. 2007) ("[T]hese affidavits contain contradictions this court cannot ignore. While the Court may not assess credibility on summary judgment, if the evidence is contradictory or implausible, it may be disregarded.")

Rebuild Contract almost nine years after their house was destroyed.[4] GNIC, on the other hand, will continue to suffer the hardship of not having access to its money for an indefinite period of time.

Accordingly, the undisputed facts demonstrate that GNIC is, as a matter of law, entitled to an Order declaring that it is the rightful owner of the escrowed funds based upon the Hakims' failure to deliver the Rebuild Contract within two years of the execution of the Settlement Agreements. Smith Barney, 866 F. Supp. at 118; Frederes, 108 B.R. at 422 (granting partial summary judgment where contract was silent as to time for performance, concluding that "there is no dispute that a person of ordinary diligence and prudence would have completed this project by the end of the Summer of 1989.").[5]

B.   GNIC Is Not Seeking Specific Performance

The Hakims contend that GNIC "has moved essentially for specific performance of its view of the Agreements, rather than for damages as a result of any breach by the Hakims." (Hakim Memorandum, at 3.) This is patently untrue. GNIC is not seeking specific performance of the Settlement Agreements that the Hakims have materially breached by failing to submit a Rebuild Contract within two years of their execution; rather, GNIC simply wants its $150,000

---

[4]   It should be noted that GNIC is not "asking this Court to void" the Settlement Agreements for a mere delay in performance, as the Hakims suggest. (Hakim Memorandum, at 4.) Rather, GNIC is exercising its right to terminate those contracts in view of the Hakims' material breach by failing to submit the Rebuild Contract within a reasonable time, i.e., two years from the execution of the Settlement Agreements on December 15, 2003. NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003) ("Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages.").

[5]   Kayvan Hakim's assertion that "it is a complex endeavor to obtain a suitable rebuild contract at a remote out-of-state location" (Hakim Decl. ¶ 3), hardly warrants a footnote. Despite what the Hakims might believe, Massachusetts is not a foreign nation plagued by civil war or famine, and has the same currency as the other fifty States. Certainly, it cannot be too difficult for the Hakims, who, according to their Answer, "maintain a residence in the Southern District of New York" to negotiate with Massachusetts contractors either in person or by telephone or e-mail. Moreover, inasmuch as the Hakims had previously agreed to the terms of the Policy, which provided coverage in excess of the stated limits of liability only if they repaired, replaced or rebuilt their Massachusetts property within two years of the loss, they cannot now be heard to argue that two years is an insufficient time.

back. Thus, the cases cited by the Hakims for the proposition that "time will not be considered the essence of a contract unless it affirmatively appears that the parties regarded time as an essential element of their bargain" (Hakim Memorandum, at 3), are irrelevant.

Those cases, ADC Orange, Inc. v. Coyote Acres, Inc., 7 N.Y.3d 484, 824 N.Y.S.2d 192 (2006); Mohen v. Mooney, 162 A.D.2d 664, 557 N.Y.S.2d 108 (2d Dep't 1990); Zev v. Merman, 134 A.D.2d 555, 521 N.Y.S.2d 455 (2d Dep't 1987); Mercantile Nat'l Bank v. Heinze, 75 Misc. 551, 135 N.Y.S. 962 (N.Y. Sup. Ct. 1912), are irrelevant for the additional reason that they all involved the question of whether time could be considered of the essence in connection with contracts that, unlike the Settlement Agreements, contained a specific date by which performance had to be completed. ADC Orange, Inc., 7 N.Y.3d at 486, 824 N.Y.S.2d at 193 ("Pursuant to the contract, the buyer was obligated to make an interim payment of $250,000 by a particular date. Because the buyer made the payment two weeks late, the outcome of the appeal turns in part on whether, in connection with that obligation, time was 'of the essence.'"); Mohen, 162 A.D.2d at 665, 557 N.Y.S.2d at 110 ("Applying the foregoing principles, it is clear that the sellers effectively made time of the essence with respect to the closing date of October 12, 1988, and then again with respect to the closing date of October 31, 1988."); Zev, 134 A.D.2d at 557, 521 N.Y.S.2d at 457 ("The defendants took the position that their letter dated January 9, 1985, which set the closing date of January 17, 1985, made time of the essence of the parties' contract."); Mercantile Nat'l Bank, 75 Misc. at 559, 135 N.Y.S. at 967 ("The legal propositions applicable to these questions are well settled. Where a definite time is fixed by the terms of the contract, the general rule at law is that time is of the essence of the contract unless a contrary intent affirmatively appears.").

Citizens Bank & Trust Co. v. Se-Fish Associates, No. 99-CV-0417E(SR), 2003 WL 22383564 (W.D.N.Y. Sept. 30, 2003), the one case cited by the Hakims involving a contract that did not specify a date for performance, actually supports GNIC's position that where a contract is silent as to the time within which performance is due, the law implies a reasonable time. Id. at *4 ("The absence of a 'time is of the essence' clause, or even a contemplated closing date, within the Agreement meant only that plaintiff had to complete the transaction within a reasonable time.").

As noted in Point I.A., supra, a reasonable time for the Hakims to submit the Rebuild Contract would have been two years from the date of the December 15, 2003 execution of the Settlement Agreements. Because the Hakims did not submit the Rebuild Contract within that period, GNIC is entitled to the escrowed funds.

## POINT II

## THE HAKIMS SHOULD BEAR THEIR OWN COSTS IN OPPOSING THIS MOTION

The Hakims argue that because GNIC's motion is frivolous and premature, GNIC should bear the costs of the Hakims' opposition. (Hakim Memorandum, at 5.) But, as demonstrated in Point I, supra, GNIC's papers are neither frivolous nor premature. GNIC moved after it had answered KMR's complaint, and granted additional time to the Hakims within which to oppose GNIC's summary judgment motion. Additionally, the Hakims do not even attempt to argue that they, as the nonmoving party, did not have the "opportunity to discover information that is essential to [their] opposition to the motion for summary judgment." Hellstrom v. U.S. Dep't of Veterans Affairs, 201 F.3d 94, 97 (2d Cir. 2000). They do not because they cannot. All the material facts necessary for the adjudication of this motion are well-known to them, and undisputed. (See Hakims' Rule 56.1 Statement.)

Also without merit is the Hakims' claim that GNIC should bear the cost of the Hakims' opposition because it "unilaterally refused to appoint a successor escrow agent following the resignation of plaintiff, when the Hakims were willing to do so, which refusal contravenes the express contractual provision mandating agreement in such circumstances." (Hakim Memorandum, at 5). This argument is fatally flawed. By the time that KMR had resigned as escrow agent in February 2007, it had already materially breached paragraph 2 of the Escrow Agreements[6] by refusing to return the escrowed funds to GNIC upon the Hakims' failure to submit the Rebuild Contract within two years, and refusing to deposit the monies into a court of competent jurisdiction when an adverse claim to the funds arose in May 2006. (See Link Aff. Exs. 9 and 10.)

Because KMR materially breached the Escrow Agreements, GNIC was no longer obligated to choose a successor escrow agent. NAS Elecs., Inc., 262 F. Supp. 2d at 145. Thus, to the extent that the Hakims' request for attorneys' fees and cost is based upon GNIC's refusal to appoint a successor escrow agent (Hakim Memorandum, at 5), it should be denied.

---

[6] Paragraph 2 of the Escrow Agreements provides that:

> The Escrow Agent shall retain the Funds and any interest thereon (the "Escrowed Funds") in the Escrow Account in accordance with this Agreement and shall disburse the Escrowed Funds to the Hakims at such time as the Hakims have delivered to and [GNIC] has received the Rebuild Contract, as that term is defined in ¶10 of the Settlement Agreement. <u>In the event that the Hakims do not deliver the Rebuild Contract, the Escrow Agent shall disburse the Escrowed Funds to [GNIC], unless any adverse claim to the Escrowed Funds has been asserted. In such event, the Escrow Agent shall deposit the Escrowed Funds in a court of competent jurisdiction with respect to such adverse claim(s).</u>

(Link Aff. Exs. 6 and 7, ¶ 2 (emphasis added).)

10

## CONCLUSION

For the reasons set forth herein, and in GNIC's moving papers, this Court should grant GNIC's motion for summary judgment declaring that GNIC is entitled to recover the $150,000 wrongfully held in escrow.

Dated: New York, New York
       June 20, 2007

                    MOUND COTTON WOLLAN & GREENGRASS

By:  s/ Lloyd A. Gura
     Lloyd A. Gura (LG-0500)
     Sanjit Shah (SS-0148)
     One Battery Park Plaza
     New York, NY  10004-1486
     212-804-4200
     *Attorneys for Defendant Great Northern*
     *Insurance Company*

AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                     )  ss.:
COUNTY OF NEW YORK   )

Irene Siegel, being duly sworn, deposes and says:

Deponent is not a party to this action, is over the age of 18 years, and resides in Queens, New York. That on the 20th day of June, 2007 deponent served the annexed **DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS SUMMARY JUDGMENT MOTION, AND IN REPLY TO THE OPPOSITION PAPERS OF KAYVAN AND YASSMINE HAKIM** on Michael J. Verde, Esq., Katten Muchin Rosenman, LLP, 575 Madison Avenue, New York, NY 10022-2585, plaintiff pro se, David J. Mark, Esq., Kasowitz, Benson, Torres & Friedman, LLP, 1633 Broadway, New York, New York, 10019, and Justine Clare Moran, Esq., 31-12 38th Street, Astoria, New York, 11103, attorneys for defendants Kayvan Hakim and Yasmine Hakim at the address designated by said attorneys by depositing the same enclosed in a postpaid properly addressed wrapper directed to each of said attorneys at the above addresses in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York.

_____
IRENE SIEGEL

Sworn to before me this
20th day of June, 2007

_____
Notary Public

CATHERINE RITZER
Notary Public, State of New York
No. 30-4744976
Qualified in Nassau County
Commission Expires September 30, 2009